4

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL INSURANCE COMPANY,<br><br>  Plaintiff,<br><br>v.<br><br>TUNGSTEN HEAVY POWDER & PARTS, INC. AND TUNGSTEN PARTS WYOMING, INC.,<br><br>  Defendants. | Case No.: 21cv1197-W-MDD<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO COMPEL GENERAL DYNAMICS' COMPLIANCE WITH SUBPOENA**<br><br>[ECF No. 32] |

## I.  PROCEDURAL BACKGROUND

This dispute concerns a Rule 45 subpoena for deposition testimony that Plaintiff served to one of Defendants' former customers, a nonparty, General Dynamics Ordnance and Tactical Systems ("GD-OTS").  On June 3, 2022, Plaintiff Federal Insurance Company's ("FIC") filed a Motion to Compel GD-OTS to produce the person most qualified to provide deposition testimony in connection with a subpoena duces tecum, and a request for an order to show cause as to why GD-OTS should not be held in contempt for failing to appear

at a deposition on May 12, 2022. (ECF No. 32 at 6, 15-16).[1]  The subpoena duces tecum is not at issue, as GD-OTS complied with that part of the amended subpoena by providing 11,000 pages of documents to FIC on May 16, 2022, the closing date for discovery in the underlying case.

The amended subpoena issued from the Southern District of California where this underlying case is pending.  The "Place" for deposition stated on the face of the amended subpoena was: "VIA ZOOM VIDEO CONFERENCING: Link to be provided at a later date)." (ECF No. 32-2 at 6-8).  FIC directed the amended subpoena to the nonparty "GENERAL DYNAMICS – Ordnance and Tactical Systems" on April 22, 2022. (*Id*.).  On May 6, 2022, GD-OTS objected to the amended subpoena and notified FIC that it would not be sitting for the deposition because the subpoena was "improper and violative of Rule 45 in multiple re[spects]." (*See* ECF No. 32-2 at 34).

**A. <u>The Arguments Opposing the Amended Subpoena</u>**

GD-OTS challenges this Court's jurisdiction to consider the Motion to Compel, arguing that FIC should have filed it in the Middle District of Florida because GD-OTS has its corporate headquarters in St. Petersburg, Florida. (ECF No. 38 at 9).  GD-OTS cites Rule 45(g)'s contempt provision to support its position.  That rule permits "the court for the district where compliance is required" to consider whether a person who fails to obey a

---

[1] Plaintiff incorrectly and repeatedly refers to seeking testimony from GD-OTS's "person most qualified" to provide the same. (ECF No. 32 at 6, 8, 11, and 16).  Federal discovery law contains no such requirement.  Instead, a subpoenaed organization must simply designate one or more persons to "testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6).

2

subpoena "without adequate excuse" should be held in contempt. Fed. R. Civ. P. 45(g). GD-OTS also relies upon Federal Rule of Civil Procedure 37(a)(2) in stating that a "motion for an order to a nonparty must be made in the court where the discovery is or will be taken," which it maintains is not the Southern District of California. (ECF. No. 38 at 8).

GD-OTS argues alternatively that it had an adequate excuse for refusing to attend the May 12, 2022 deposition because the amended subpoena was facially invalid. (ECF. No. 38). GD-OTS asks the Court to quash the amended subpoena pursuant to Rule 45(d)(3) because it: (1) failed to provide a reasonable amount of time for GD-OTS to respond; (2) failed to comply with the geographical 100-mile requirements of Rule 45(c)(1)(A); and (3) was unduly burdensome. (ECF No. 38 at 7-10, 14).

Defendants (collectively referred to here as "Tungsten") also oppose the Motion to Compel as untimely and unfair. (ECF No. 36 at 5-6). Tungsten seeks sanctions against FIC and asks the Court to find that FIC may not use at trial, or rely in its substantive motions, any of the documents GD-OTS produced to FIC because Plaintiff has never provided those materials to Tungsten. (ECF No. 36 at 5-6). Defendants also seek sanctions against FIC for failing to meet and confer with Tungsten prior to issuing the amended subpoena to its former customer or before filing its Motion to Compel. (*Id.* at 7).

**B. Brief Conclusion**

The Court **DENIES** FIC's Motion to Compel because Plaintiff fails to provide facts or law to suggest that the Southern District of California is the court for the district where compliance with the amended subpoena is required. Even if this Court could consider GD-OTS's refusal to comply with the amended subpoena, FIC's arguments fail because the subpoena did not

command GD-OTS to attend and testify at a "specified time and place" as required by the rule, and no evidence suggests that San Diego could be that place. To quote M.C. Hammer, this Court simply "can't touch this." MC HAMMER, U Can't Touch This, on PLEASE HAMMER DON'T HURT 'EM (Capitol Records 1990).

### C. The Timing and History of the Amended Subpoena

Before summarizing Plaintiff's specific arguments in support of the Motion to Compel, it is helpful to describe salient facts leading up to this disagreement. This is an insurance coverage dispute concerning Tungsten's claim for loss of business income under a commercial insurance policy that Plaintiff issued to Tungsten from June 1, 2018, to June 1, 2019. (ECF No. 1 at 2-3). In May 2019, Tungsten submitted a claim to FIC after an April 2019 power outage damaged an industrial furnace used to process raw tungsten into fragments Defendants could sell. (*Id.* at 3-4).

GD-OTS is a Virginia corporation with its principal place of business in St. Petersburg, Florida. (ECF No. 38 at 9). GD-OTS is Tungsten's biggest potential customer regarding the business that was lost due to the malfunction of the furnace at issue in the insurance claim. (ECF No. 32 at 8-10; ECF No. 38 at 9). The parties do not dispute the probative value of testimony from GD-OTS. FIC became aware of GD-OTS's importance during a December 20, 2019 deposition of a former senior executive at Tungsten. (ECF No. 32 at 8 & n.3). Despite FIC's awareness, Plaintiff did not seek to depose a corporate representative until it served a notice of deposition and subpoena to GD-OTS on April 8, 2022, less than six weeks before discovery closed in this case. (ECF No. 36-6 at 2-17).

FIC first subpoenaed documents, without deposition testimony, from GD-OTS on March 23, 2022. (ECF No. 36-1 at 2 [White Decl. ¶ 4]). It its March

subpoena duces tecum, FIC set the deadline for production of documents as April 22, 2022, and the place for production as Alexandria, Virginia. (ECF No. 36-2 at 3). FIC first served "General Dynamics Corporate Headquarters" in Reston, Virginia. (*Id.*). The "Notice of Issuance of Subpoena" named "General Dynamics Corporation c/o CT Corp." in Glendale, California as the entity ordered to produce documents. (*Id.* at 2). On March 31, 2022, Tungsten sent FIC lengthy objections to the nonparty subpoena (ECF No. 36-3), and FIC promptly withdrew it (ECF No. 36-4).

FIC, at the instruction of its own attorney, next incorrectly directed an April 8th subpoena for deposition testimony to "General Dynamics (Hellfire R9E Program)." (ECF No. 32-2 at 2 [Laffey Decl. ¶ 2]; ECF. No. 36-6 at 24). FIC first served its subpoena to GD-OTS's registered agent in Glen Allen, Virginia. (ECF No. 32-2 at 24). The deposition date was May 2, 2022. (ECF No. 36-6 at 3). FIC set the "Place" of compliance in the April 8th subpoena as "Zoom Videoconference." (*Id.*).

GD-OTS did not agree to provide a corporate representative via Zoom videoconference. Instead, when FIC notified GD-OTS that it wanted a representative to attend a remote deposition, GD-OTS sent FIC the following objection:

> GD-OTS is headquartered in St. Petersburg, Florida—over 2,400 miles away. Remarkably, the Subpoena insists on a "remote" option "[b]ecause the office of Murchison & Cumming, LLP[, FIC's law firm,] is not open to the public on the scheduled date due to the Covid-19 pandemic." But GD-OTS would be under no obligation to appear at a deposition at the offices of Murchison & Cumming, LLP, which are exclusively located in California and Nevada. Providing a "remote" option does not obviate the federal rules' 100-mile requirement. GD-OTS has not agreed to a remote deposition and is unaware of any case law suggesting that this requirement can be

> avoided simply because counsel does not want to travel and is willing to use videoconferencing technology.

(*See* ECF No. 32-2 at 34). GD-OTS did not identify a corporate representative for the deposition, nor did it file a motion to quash in the district that it maintained had jurisdiction over this dispute, the Middle District of Florida.

Ten days after GD-OTS received the April 8th subpoena, it advised Plaintiff that the appropriate entity to serve was "General Dynamics Ordnance and Tactical Systems." (ECF No. 32-2 at 2 [Laffey Decl. ¶ 4]). FIC served the amended subpoena now at issue to GD-OTS on April 22, 2022 and proceeded to meet and confer with the nonparty about compliance.

At one point, FIC and GD-OTS considered a declaration in lieu of deposition, but those negotiations failed. (ECF No. 38-2 at 2 [Warren Decl. ¶¶ 2-5]). GD-OTS sent lengthy, written objections to FIC on May 6, 2022. (ECF No. 32-2 at 33-41). Although GD-OTS ultimately agreed that it would produce documents to FIC by May 16, 2022, GD-OTS refused to appear for the deposition. (ECF No. 32-2 at 43 [asserting via May 11, 2022 email, "We are not joining."]).

### D. FIC's Arguments in Support of the Amended Subpoena

Plaintiff maintains the amended subpoena was valid, reasonable, and timely because it provided twenty days between its issuance April 22, 2022, and the deposition May 12, 2022. (ECF No. 32 at 13). FIC argues that its Motion is timely because it complies with this Court's Chambers' Rules, which give parties 30 days after the completion of a deposition transcript to file motions to compel oral discovery. (ECF No. 32 at 7 n.2). The deposition transcript was completed on May 12, 2022, when GD-OTS failed to appear. (ECF No. 32-1 [Reporter's Aff.]). Further, because FIC served its April 8th

subpoena to the nonparty on April 11, 2022, GD-OTS had notice of the deposition prior to April 22, 2022. (ECF No. 32 at 13).

FIC argues that jurisdiction is proper in the Southern District of California because GD-OTS "has multiple business locations in California, including one in San Diego, California." (ECF No. 32 at 6). Plaintiff cites a GD-OTS website that lists a location and address for GD-OTS's San Diego Operations. (ECF No. 32 at 6 n.1). FIC also contends that GD-OTS could have designated a person from its "San Diego location (or an internet connection within 100 miles and within the Southern District of California)" because testimony was remote "via videoconference." (*Id.* at 7).

Discovery in the underlying case closed on May 16, 2022. (ECF No. 19). FIC filed its Motion to Compel on June 3, 2022. (ECF No. 32). Pretrial motions were due June 16, 2022. (*Id.*). Both parties filed motions for summary judgment. (ECF Nos. 39, 47).

## I.     LEGAL STANDARD

Rule 45 governs the requirements associated with serving a subpoena for deposition testimony to a nonparty. Fed. R. Civ. P. 45(c)(1). A valid subpoena for deposition testimony must "command each person to whom it is directed to . . . attend and testify" at "a specified time and place." Fed. R. Civ. P. 45(a)(1)(A)(iii). A subpoena must also state the court from which it issued, the title of the action and its civil number, and set out the text of Rule 45(d) and (e), which govern the duties and protections offered to a person subject to a subpoena. Fed. R. Civ. P. 45(a)(1)(A)(i), (ii), and (iv).

The rules protect nonparties from inconvenience by limiting issuance of a subpoena for deposition testimony to "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). A party issuing a subpoena must take reasonable steps to

avoid imposing "undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1); *see Black v. Wrigley*, No. 18cv2367-GPC-BGS, 2019 WL 1877070, at *5 (S.D. Cal. Apr. 26, 2019) (finding undue burden where a subpoena required production more than 100 miles from where the nonparty resided, was employed, or regularly conducted business in person). "The court for the district where compliance is required" must enforce that duty and impose an appropriate sanction on a party or attorney who fails to comply with that requirement. Fed. R. Civ. P. 45(d)(1).

Parties may also issue subpoenas commanding the "production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A). Before serving a subpoena for such documents or tangible things upon a nonparty, a notice and copy of the subpoena must be served on each party. Fed. R. Civ. P. 45(a)(4). The rules permit a person commanded to produce *"documents or tangible things"* to serve the issuing party written objection within 14 days after the subpoena is served or before compliance is required (whichever is earlier). Fed. R. Civ. P. 45(d)(2)(B) (emphasis added). Such objections are not permitted to a nonparty ordered to appear for deposition testimony.

The "only relief available to a nonparty when served with a subpoena to testify at a deposition is to file a motion to quash or modify the subpoena." *BNSF Ry. Co. v. Alere, Inc.*, No. 18cv291-BEN-WVG, 2018 WL 2267144, at *7 (S.D. Cal. May 17, 2018) ("When a nonparty wishes protection by the Court, the nonparty must seek out such protection, and the proper method to seek the Court's assistance after being served with a subpoena to testify at a deposition is to file a motion to quash or modify the subpoena."). If a nonparty were "simply able to serve objections to any subpoena and avoid

compliance, there would be no need for a nonparty to quash or modify a subpoena. A nonparty could simply lodge an objection to any subpoena and wait for the subpoenaing party to file a motion to compel compliance." *See id.* (citing *Biliski v. Kappos*, 561 U.S. 593, 607-08 (2010) (noting canon against interpreting a provision in a manner that would render another provision superfluous)); *see generally Aetna Casualty and Surety Co. v. Rodco Autobody*, 130 F.R.D. 2 (D. Mass. 1990) ("the fact that objections were served [by the nonparty] is *no excuse whatsoever* not to attend the deposition."); *Abbot v. Kidder, Peabody & Co.*, No. 97 C 3251, 1997 WL 337228, *3 (E.D. Ill. June 16, 1997) (finding that written objections to service of subpoena did not excuse nonparty from attending deposition absent a motion to quash or a protective order).

Similarly, a *party* that seeks to challenge a Rule 45 subpoena served on a *nonparty* cannot simply object to the subpoena; the party must file a motion to quash or modify the subpoena for a protective order. *Tucker v. AMCO Ins. Co.*, 17cv01761-DAD-SKO, 2019 WL 3767579, at *3 (E.D. Cal. Aug. 9, 2019) ("[A] party generally has no standing even to quash a subpoena served upon a nonparty, 'except as to claims of privilege relating to the documents being sought.'"). Grounds for a party objecting to a subpoena issued to a nonparty include, *inter alia*, situations where a party has a personal right or privilege regarding the information held by the nonparty. *See Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 973 (C.D. Cal. 2010).

Parties and nonparties seeking to quash or modify a subpoena must do so in the district where compliance is required. Fed. R. Civ. P. 45(d)(3)(A). The Court for the district where compliance is required must quash or modify a subpoena upon a timely motion if the subpoena:

(i)     fails to allow a reasonable time to comply;

  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv).

  The primary purpose of resolving subpoena-related motions in nonparties' home district "is to protect them from the burden of challenging a subpoena in a remote location[.]" *Dr. Muhammad Mirza, et al. v. YELP, INC.*, No. 21-MC-80077-TSH, 2021 WL 2939922, at *3 (N.D. Cal. July 13, 2021) (considering a motion to transfer subpoena-related issues) (citation omitted); *Raap v. Brier & Thorn, Inc.*, No. 17-MC-3001, 2017 WL 2462823, at *3 (C.D. Ill. July 7, 2017) ("The purpose of protecting nonparties is defeated if a party could demand compliance in a location more than 100 miles from where the nonparty resides, is employed, or regularly transacts business in person and still require the nonparty to adjudicate a dispute over that subpoena in a distant forum").

  When a subpoenaed party refuses to obey a subpoena, the "court for the district where compliance is required" may hold in contempt a person who, "having been served, fails without adequate excuse" to comply with the order. Fed. R. Civ. P. 45(g). "Adequate excuse" is not a defined standard. *See* Fed. R. Civ. P. 45 Advisory Committee's Note to 1991 Amendment. Instead, it is factually dependent. *Sanchez v. Albertson's, LLC*, No. 2:19-CV-2017-JAD-DJA, 2022 WL 656369, at *8 (D. Nev. Mar. 3, 2022) (citing *Residential Constructors, LLC v. Ace Property and Casualty Ins. Co.*, No. 2:05-cv-01318-BES-GWF, 2006 WL 8442461, at *4 (D. Nev. Aug 8, 2008) (compiling cases)). When considering contempt, "[t]he moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and

definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *TLX Inc. v. JetBlue Airways Corp.*, No. CV-19-04734-PHX-SMB, 2022 WL 523320, at *1 (D. Ariz. Feb. 22, 2022).

## II.   DISCUSSION

### A. Rule 45(g):  This Court is Not "the Court for the District Where Compliance is Required"

When a nonparty "fails without adequate excuse to obey" an order to appear for deposition testimony, "the court for the district where compliance is required" may hold that party in contempt pursuant to Rule 45(g).  Fed. R. Civ. P. 45(g).  That provision, like many contained within Rule 45, vests power and authority to resolve disputes about subpoenas in "the court for the district where compliance is required." *Id*.

Some courts apply a "jurisdictional analysis" to the geographical questions that surround Rule 45 disputes. *See Webb v. County of Stanislaus*, No. 1:19CV01716-DAD-EPG, 2021 WL 1931507, at *1 (E.D. Cal. Apr. 30, 2021) ("The issuing court otherwise lacks jurisdiction to enforce the subpoena if compliance will occur in another district.") (citing *Europlay Capital Advisors, LLC v. Does*, 323 F.R.D. 628, 629 (C.D. Cal. 2018) (denying motion to compel due to lack of jurisdiction where compliance would occur in another district)); *see also Youngevity Int'l, Corp. v. Smith*, No. 16cv704-BTM-JLB, 2017 WL 6418961, at *3 (S.D. Cal. Dec. 15, 2017) (holding that the court lacked jurisdiction to enforce a subpoena under Rule 45 where the place of compliance was in another district); *Montgomery v. Risen*, No. 15-CV-02035-AJB-JLB, 2015 WL 12672825, at *1 (S.D. Cal. Nov. 5, 2015) ("The Court lacks the jurisdiction under the Federal Rules of Civil Procedure to enforce the subpoena because it is not the court where compliance is required.").

Other courts reject a jurisdictional approach to Rule 45, in part because jurisdiction concerns a forum state's power, or notice to a potential witness, which is unrelated to Rule 45's focus on the burden to nonparties. *See Regents of Univ. of California v. Kohne*, 166 F.R.D. 463, 465 (S.D. Cal. 1996) ("Jurisdictional analysis is inappropriate for analyzing Rule 45 because it responds to an entirely different set of concerns."); *see also Sol v. Whiting*, No. CV-10-01061-PHX-SRB, 2014 WL 12526314, at *2 (D. Ariz. July 22, 2014) ("If the 100-mile rule was jurisdictional, there would be limits on whether parties could stipulate to procedures that departed from Rule 45(c) and would raise questions whether a court could quash or modify a subpoena that transgressed the geographical limits found under that rule."). The *Sol* court explained that parties conflate jurisdictional analysis with non-jurisdictional objections raised under Rule 45, noting that Rule 82 excludes framing this as a jurisdictional matter because the federal rules "do not extend or limit the jurisdiction of the district courts or the venue of actions in those courts." *Sol*, 2014 WL 12519789, at *2 (citing Fed. R. Civ. P. 82).

Many courts focus instead on the facial invalidity of a challenged subpoena, examining whether such documents are simply void or invalid for failing to comply with the "form and content" mandates in Rule 45's subsection (a)(1)(A)(i)-(iv). *See Black*, 2019 WL 1877070, at *4 (finding subpoena facially invalid where the mandatory date and time for production was left blank) (citing *WH Holdings, LLC, v. Ace Am. Ins. Co.*, No. 09C7133, 2010 WL 3732149, at 5 (N.D. Ill. Sept. 17, 2010) ("The failure of the subpoena [to] identify the Court from which it purportedly issued renders it facially invalid under Federal Rule of Civil Procedure 45(a)(1)(A)(ii). The rule is phrased in mandatory terms, and does not provide for any exceptions.")). Courts often equate facial invalidity with a lack of jurisdiction. *See j2 Glob.*

*& Advanced Messaging Techs., Inc. v. Bank of Am. Corp.*, No. 3:12-MC-00134-GCM, 2012 WL 5198367, at *1 (W.D.N.C. Oct. 19, 2012) (concluding the court was without jurisdiction because party requested production of documents outside the proper district, and subpoena was facially invalid). If the subpoenaed party has filed a motion to quash or modify a subpoena, then the burden is placed on the party hoping to avoid appearing for a deposition (or producing documents) under the provisions of subsection (d)(3). Fed. R. Civ. P. 45(d)(3)(A)-(B).

Regardless of the label attached to the problem, the pivotal question necessarily and repeatedly becomes "where is compliance required?" *See Pizana v. Basic Research, LLC*, No. 1:18cv00644-DAD-SKO, 2022 WL 1693317, at *2 & n.3 (E.D. Cal. May 26, 2022) ("Rule 45 consistently, through numerous sections of the Rule, requires any motions or applications related to a subpoena be brought in the district where compliance is required.").

Courts apply different tests to determine where compliance with a subpoena is required. *See generally Youngevity*, 2017 WL 6418961 ("place of compliance is tethered to the location of the subpoenaed person."). There are at least two approaches courts take when evaluating this issue. One looks at the subpoenaed party's corporate headquarters. *See Europlay*, 323 F.R.D. at 630 (place of compliance is where the target company is headquartered); *see also Williams v. Camden USA Inc.*, No. 19cv691-AJB-AHG, 2021 WL 5417516, at *1 (S.D. Cal. Nov. 19, 2021) (denying motion to compel because court had no jurisdiction to consider nonparty's production more than one-hundred miles away from where Twitter was headquartered).

The second approach considers the place identified on the face of the subpoena itself. *Youngevity*, 2017 WL 6418961, at *2 (recognizing cases that rely on the district named on the face of the subpoena, "even if that place of

compliance is not proper under Rule 45(c)") (internal citation omitted).  Here, FIC's arguments fail under both standards.

FIC does not dispute that GD-OTS's principal place of business is Virginia, and its corporate headquarters is Florida.  Unquestionably, the Southern District of California is not an optional "place of compliance" under that analysis.  To consider the place of compliance identified on the face of the subpoena, the Court looks more closely at the amended subpoena itself.

### B. Rule 45(a)(1):  The Amended Subpoena Fails to Command Attendance at a Specified "Place" of Compliance

The amended subpoena lists the "Place" of compliance as "VIA ZOOM VIDEO CONFERENCE."  (ECF No. 32-2 at 6).  A "ZOOM VIDEO CONFERENCE," however, is not a place.  *See Frobe v. UPMC St. Margaret*, No. 2:20cv00957-CRE, 2021 U.S. Dist. LEXIS 129924, at *3 (W.D. Pa. July 13, 2021) ("'Zoom Videoconferencing' is not a 'Place;' rather, it is a method of taking the deposition.").  In *Frobe*, the court required the subpoenaing party to modify the subpoena to have the place of deposition changed to within 100 miles of the deponent's home or place of employment, whichever was more convenient to the deponent.  *Id*. at *4.

A valid subpoena must list a specific place of compliance, pursuant to Rule 45(a)(1)(A)(iii).  *CSS, Inc. v. Herrington*, 354 F. Supp. 3d 702, 710 (N.D. Tex. 2017) (recognizing that "an email address does not qualify as a location or place where compliance is required under Rule 45"); *Russell v. Maman,* No. 18-CV-06691-RS (AGT), 2021 WL 3212646 (N.D. Cal. July 29, 2021) (denying a motion to compel where the subpoena listed the place of compliance as "via Zoom").  A subpoena that fails to designate a "specific time and place" violates Rule 45(a)(1)(A)(iii) because "the place of compliance must be a physical 'place' subject to 'geographical limits' and capable of being measured

according to mileage." *Herrington*, 354 F. Supp. 3d at 709. The geographical limitation exists to help avoid undue burden or expense on a person subject to the subpoena, Fed. R. Civ. P. 45(d), and the burden on a witness required to physically appear for deposition testimony. *See Regents of Univ. of California*, 166 F.R.D. at 464 (the only concern of Rule 45(c) is the burden to the witness being required to physically appear) (citing to 1991 advisory committee note).

Plaintiff suggests there is no requirement to appear physically when a deposition occurs virtually. (ECF No. 32 at 15). FIC argues that "the deponent would presumably not need to leave General Dynamics' office" because he or she could participate from "virtually anywhere" in the United States. (*Id.*). FIC raises a novel argument that, unfortunately for Plaintiff, does not comport with the law. *Cf. Flores-Kemmerer v. Portfolio Recovery Assocs., LLC*, No. 1:20-CV-02519-JPH-MG, 2022 WL 612334, at *1 (S.D. Ind. Mar. 2, 2022) ("Although videoconference depositions have become more prevalent during the recent COVID-19 pandemic and are oftentimes more convenient for counsel and witnesses, absent agreement between the parties, a deposition may be conducted remotely only by court order.").

Parties may stipulate to conduct video depositions through electronic means. *See generally Herrington*, 354 F. Supp. 3d at 710 ("parties may stipulate . . . that a deposition be taken by telephone or other remote means"). Where there is no such mutual agreement, however, this Court will not permit a party's Zoom designation to vitiate the stated purpose of the federal rules. *See Black*, 2019 WL 1877070, at *5 (recognizing the importance of protecting nonparties from adjudicating a dispute in a distant forum).

In this case, the parties did not agree to a remote, videoconference deposition. To the contrary, GD-OTS objected to that designation *and* notified FIC that (1) its principal place of business was in St. Petersburg, Florida, and (2) Nevada and California bore no connection to their corporate representatives. (ECF No. 32-2 at 34). If nothing else, FIC should have filed its Motion to Compel in the Middle District of Florida or amended its subpoena a third time to at least identify a physical place of compliance. Then, this Court could decide whether to evaluate the "Place" of compliance asserted on the subpoena or designate the corporate headquarters as the place of compliance. The importance of identifying a geographical place of compliance on the face of a subpoena is borne out in this case, where the absence of such details renders the resolution difficult at best, and simply not possible here. *See Herrington*, 354 F. Supp. 3d at 710 ("the court addressing the motion to compel will have no way of dependably making the fact-intensive determination whether the subpoena's stated place of compliance is within 100 miles of where the subpoenaed person resides, is employed, or regularly transacts business in person without hearing from the subpoenaed person").

This is not the first time in this case that FIC has run afoul of the Court's expectations, rules, and requirements. Notwithstanding, the Court denies Defendants' request for sanctions. The Court will not penalize FIC for asserting an innovative, though unmerited, approach to facilitating deposition testimony of a nonparty in a manner that is most expedient and cost-effective for the parties involved. This is just not that place. The Court also will not consider FIC's use of GD-OTS's documents at trial or in pretrial motions because that question is not properly raised in this nonparty discovery dispute.

For purposes of judicial efficiency and economy, and because this battle has the potential to reoccur or get kicked down the road as the trial clock is ticking, the Court opines briefly regarding Plaintiff's alternative argument for choosing San Diego as the forum for this dispute on the grounds that GD-OTS "regularly transacts business in person" here.

### C. Rule 45(c):  San Diego Is Not Where GD-OTS "Regularly Transacts Business in Person"

As an alternative to FIC's argument for a remote videoconference location as a valid place of compliance, Plaintiff contends that San Diego is an acceptable "place of compliance" under Rule 45(c)(1), which permits a subpoena to command deposition testimony in a location within 100 miles of where the subpoenaed party "regularly transacts business in person."  Fed. R. Civ. P. 45(c)(1)(A).  According to Plaintiff, the Southern District of California may litigate its dispute because GD-OTS has a branch location in San Diego, and therefore, GD-OTS could designate a witness to testify from that location.  (ECF No. 32 at 6-7).

The subpoenaing party, however, does not possess the authority to determine who will testify on the organization's behalf.  *See generally* Fed. R. Civ. P. 30(b)(6) ("The *named organization* must designate one or more officers . . . to testify on its behalf") (emphasis supplied).  Moreover, the only presence GD-OTS has in this district is an affiliated entity called "General Dynamics Motion Control, LLC," which the nonparty represents as a "completely separate corporate entity" from GD-OTS that bears no relationship to the current dispute.  (ECF No. 38 at 9 n.1).

Plaintiff suggests no more than the mere existence of that affiliated group to support its position.  (ECF No. 32 at 6 & n.1).  A subpoenaing party cannot compel compliance at *any* location where a nonparty has a corporate

office. *Europlay*, 323 F.R.D. at 629-30 (rejecting the argument that a nonparty can be compelled to produce documents at a location simply because the nonparty has an office there). The Court finds that FIC's effort to establish this Court's power to order GD-OTS's compliance with the amended subpoena based on GD-OTS's affiliated San Diego entity falls short.

## IV.  CONCLUSION

The Court **DENIES** Plaintiff's Motion to Compel. (ECF No. 32).

The Court **STRIKES** ECF No. 33 as moot. That Motion is identical to ECF No. 32 in all material ways. It simply lacks an attached proposed order that is included with ECF No. 32, and it includes Points and Authorities as an attachment, rather than placing it in the body of the Motion.

**IT IS SO ORDERED.**

Dated:   July 18, 2022

Hon. Mitchell D. Dembin
United States Magistrate Judge